# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **SERGIO MOTUTO SILVA,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **vs.** ) <br> ) <br> **UNITED STATES OF AMERICA,** ) <br> ) <br> **Defendant.** ) <br> ) <br> ) <br> ) | Civil Action Number <br> **5:20-cv-8000-AKK** |

## **MEMORANDUM OPINION**

Sergio Silva, a federal prisoner, moves the court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Doc. 1. Silva argues his trial counsel provided ineffective assistance by misrepresenting the terms of his plea deal, failing to investigate key facts, and failing to challenge the presentence investigation report. *Id.* at 1, 5, 9. He also claims a violation of his due process rights. *Id.* at 2. The motion is due to be denied.

**I.**
**A.**

In 2014, as a part of a drug trafficking investigation, law enforcement used a source to purchase a controlled substance from Silva. CR doc. 37 at 3.[1] Silva

---

[1] Record documents relating to Silva's underlying criminal case no. 5:16-cr-00257-AKK-JHE are cited herein as CR doc.

instructed the source to meet him at a residence located on Lynwood Drive. *Id.* Silva arrived at the residence in his car, with another individual, J.G., following him in a second car. *Id.* at 4. After informing the source that he needed to retrieve the drugs, Silva entered the residence, returned, and sold the source the controlled substance. *Id.* Days later, the source informed law enforcement that Silva was leaving a different residence with drugs. *Id.* Based on that information, as Silva and J.G. drove in separate vehicles toward the Lynwood residence, law enforcement stopped both vehicles and found a large amount of cocaine in Silva's car and a gun in J.G.'s car. *Id.* at 4-5. Law enforcement also found a gun in the primary bedroom of the Lynwood residence, along with eight grams of cocaine in the living room. *Id.* Also, law enforcement found a large amount of cocaine, cash, and other drug trafficking materials at the residence the source mentioned Silva leaving. *Id.*

In 2015, law enforcement stopped a vehicle driven by an unnamed driver and in which Armenta-Romero was a passenger. *Id.* at *5*. Romero and the driver reported traveling from Georgia, and Romero's phone showed communications between him and Silva. *Id.* Law enforcement discovered cocaine and methamphetamine in the vehicle. *Id.* at 6. A witness informed law enforcement at some point that Romero collected money from Silva, exchanged it for drugs in Atlanta, Georgia, and then delivered the drugs to an individual named Aguilar. *Id.*

In 2016, a source contacted Silva about buying methamphetamine, and Silva instructed the source to pick up the drugs that night from Aguilar. *Id.* at 7. Law enforcement found drugs in Aguilar's car when they arrested him. *Id.* at 8.

**B.**

The Government charged Silva with conspiracy to distribute and possess with intent to distribute cocaine and methamphetamine; attempt to possess with the intent to distribute the same; and possession with intent to distribute methamphetamine, *see* CR doc. 1. The Government offered Silva a plea agreement that called, in part, for Silva to admit key facts, including those outlined above. CR doc. 37. Silva claims he requested trial counsel investigate who owned the firearm found in the Lynwood residence, and that counsel responded "that he should not worry about the firearm, it won't be used against him and had no connection to the drugs in his federal case." *Id.* at 4-5. Further, Silva alleges he expressed concern about the presence of the facts related to J.G. in the factual basis of the plea. Doc. 1-1 at 4. He attests he "pled with [counsel] to investigate the facts in the federal case and make sure the government to not mix up facts in the State case with the facts in this federal case." *Id.* Allegedly, trial counsel "told [Silva] that no firearm was in [his] possession and it won't be used against [him,] [and] that [Silva's] role was like everybody else, so [he] should not worry." *Id.* Silva maintains that based on these assurances, he pleaded guilty and

admitted to the facts involving the guns and his elevated role in the conspiracy. Doc. 1-1 at 1-7.

## C.

The presentence investigation report recommended increasing Silva's offense level by two based on the guns and by an additional three based on his role as a manager or supervisor. PSR at 14. Counsel filed objections, claiming the guns were not related to the drug crimes and that Silva worked alongside his co-defendants and was not a manager or supervisor. CR doc. 41 at 2-3. However, before the sentencing hearing, counsel notified Silva he planned to withdraw the objections. Doc. 1 at 6. Counsel allegedly instructed Silva to agree and informed Silva he would receive a sentence of 20 years or more if he refused. *Id.* At the hearing, counsel moved to withdraw the objections, and when the court asked Silva if he agreed, Silva said "yes." CR doc. 81 at 3. Based on the PSR and the underlying facts Silva admitted to in the plea agreement, the court increased Silva's offense level by two for possession of a dangerous weapon in connection with a drug trafficking crime and by three for his role as a manager or supervisor. *Id.* at 4-5; PSR 14-15. Further, the court found Silva ineligible for safety-valve relief due to his manager or supervisor role in the criminal activity and the firearms. CR doc. 81 at 4-5.

After calculating the guideline offense level and Silva's criminal history, the court determined the advisory guidelines called for a sentence of 235 to 293 months.

CR doc. 81 at 4. And in light of the Government's motion for a downward departure and the 18 U.S.C. § 3553(a) sentencing factors, the court sentenced Silva to a term of 176 months. CR doc. 81 at 5, 15.

## D.

The Eleventh Circuit affirmed on September 14, 2018. *See* CR doc. 92-1 at 1. As a result, Silva's conviction became final on December 13, 2018.[2] Silva claims his appellate counsel failed to communicate with him after filing his appeal. CR doc. 93 at 1-2. Allegedly, appellate counsel never notified Silva that the Circuit had denied the appeal, and Silva only learned about the decision "nearly a year later . . . ." Doc. 1-1 at 6; CR doc. 93 at 1-2. Silva claims he could not file anything immediately because he "ha[d] no access to legal materials nor [the] prison law library" due to a lock down. CR doc. 93 at 2. Ultimately, on September 24, 2019, Silva moved for an extension to file his § 2255 petition. *Id.* Then, Silva mailed his petition on December 30, 2019, and the clerk docketed it thereafter. *See* doc. 1.

## II.

Under 28 U.S.C. § 2255, a federal prisoner may file a motion "to vacate, set aside or correct the sentence[,]" in part, on the basis "that the sentence was imposed in

---

[2] This was the deadline to file a petition for writ of certiorari to the Supreme Court. *See* CR doc. 92 (entering judgment on September 14, 2018); *Clay v. United States*, 537 U.S. 522, 522 (2003); Sup. Ct. R. 13 (providing 90 days to petition for writ of certiorari).

5

violation of the Constitution or laws of the United States . . . ." 28 U.S.C. § 2255(a). To obtain relief, relevant here, a petitioner must file his motion within one year of the conviction in his case becoming final. 28 U.S.C. § 2255(f). Once filed, Rule 4(b) directs this court to dismiss a § 2255 claim if it is plainly apparent that the petitioner "is not entitled to relief[.]" Rule 4(b), 28 U.S.C. § 2255.

With this general background in mind, the court turns now to the merits of Silva's request for relief, beginning in Section A with a determination of whether his petition is timely. In Section B, the court will address the ineffective assistance of counsel claims, and Section C will evaluate the due process claim.

## A.

Silva mailed his § 2255 petition 17 days after the filing deadline,[3] and the clerk docketed it seven days later. *See* doc. 1. Prior to filing his petition, Silva moved for an extension. *See* CR doc. 93. The court generally does not have jurisdiction over a motion for an extension before the actual § 2255 petition is filed. But, the court may treat such a motion as an actual petition if the extension request includes the substance of the claims. *See Castro v. United States*, 540 U.S. 375, 377 (2003); *Swichkow v. United States*, 565 F. App'x 840, 842-844 (11th Cir. 2014); *Stewart v.*

---

[3] A movant must file a § 2255 petition within one year of "the date on which the judgment of conviction becomes final[.]" 28 U.S.C. § 2255(f)(1). There are statutory tolling provisions, but none of those provisions are implicated here. 28 U.S.C. § 2255(f).

*United States*, 646 F.3d 856, 857 (11th Cir. 2011). In Silva's case, however, his motion did not provide the substance of the § 2255 claims. *See* CR doc. 93.

### 1.

The court may toll the period of limitations if Silva "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002). To do so, however, "the petitioner must show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *Dunn v. Sec'y, Dep't of Corrections*, 808 F. App'x 778, 781 (11th Cir. 2020).

### a.

"The diligence required for equitable tolling purposes is reasonable diligence." *Holland*, 560 U.S. at 653. Silva contends he "diligently tried to contact [appellate counsel] with no success[,]" in the hopes of receiving an update on his appeal. *See* CR doc. 93 at 1-2. Allegedly, Silva wrote letters, left messages, and phoned counsel. *Id.* And when he finally found out that the Circuit had rejected his appeal, Silva moved promptly to extend the deadline to file his petition. *Id.* Thereafter, despite a prison lockdown that impacted his ability to access the law library, Silva managed

to file his petition within a few weeks after the deadline. *Id.* at 2-5; doc. 1. These actions show reasonable diligence.

**b.**

To show that an extraordinary obstacle caused his failure to meet the deadline,[4] Silva cites appellate counsel's failure to notify him of the outcome of his appeal. CR doc. 93 at 1-2. "Because a lawyer is the agent of his client, a federal habeas petitioner . . . is ordinarily bound by his attorney's errors . . . ." *Damren v. Florida*, 776 F.3d 816, 821 (11th Cir. 2015) (internal quotations omitted). "Attorney negligence, however egregious, will never qualify as an 'extraordinary circumstance' unless the negligence rises to the level of actual or effective abandonment of the client." *Id.* In this case, because counsel surely knew that the time limit to file began to run when the Circuit issued its opinion, the alleged failure to communicate at all with Silva is effectively an abandonment and qualifies as an extraordinary circumstance. *Id.*; *Knight*, 292 F.3d at 711. And because Silva had no reason to file his petition until after the resolution of his appeal, counsel's abandonment is causally connected to the missed deadline.

In sum, Silva's contentions are sufficient to equitably toll the period of limitations between the Circuit's ruling and the day Silva discovered the status of his appeal.

---

[4] *Holland*, 560 U.S. at 649; *Dunn*, 808 Fed. Appx. at 781.

*See Knight*, 292 F.3d at 712; doc. 1-1 at 6. Therefore, the court will consider the merits of the petition.

**B.**

Silva claims his trial counsel provided ineffective assistance in violation of the Sixth Amendment. Doc. 1 at 8. To prevail, Silva must demonstrate that counsel's performance fell below an objective and reasonable professional norm and that it prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court may dispose of an ineffective assistance claim if Silva fails to carry his burden of proof on either the performance or the prejudice prong. Stated differently, the court need not address the adequacy of counsel's performance if Silva fails to make a sufficient showing of prejudice and vice versa. *Id.* at 697.

**1.**

Silva argues, in part, that trial counsel proved ineffective at the plea stage. Doc. 1 at 5. Allegedly, counsel misrepresented what Silva was pleading guilty to by telling Silva that the court would not deem the firearms related to the drug charges and would find he had an identical role as his co-defendants. Docs. 1-1 at 4; 1 at 5. In essence, Silva contends counsel tricked him into pleading guilty through counsel's assurances regarding the firearms and his role in the crimes, and that counsel mispresented the consequences of the plea agreement. Doc. 1 at 1, 4-5.

There are several flaws with Silva's contentions that preclude relief. To begin, a claim for ineffective assistance based on counsel's alleged misrepresentation will fail if the defendant "was, or had ample opportunity to be aware of the[] consequences" of his plea agreement. *Harris v. United States*, 769 F.2d 718, 721 (11th Cir. 1985). Silva's plea agreement outlined the specific facts Silva admitted to, and Silva stipulated that the facts were "substantially correct and that the Court c[ould] use the[m] [] in calculating [his] sentence." CR doc. 37 at 8. Moreover, the court confirmed the accuracy of the facts at the change of plea hearing. CR doc. 90 at 18-19. These facts Silva stipulated to and admitted to in open court included the firearms at issue and his leadership role in the conspiracy. Doc. 37 at 3-8. Based on this, Silva had enough opportunity to learn of the consequences of his plea before he pleaded guilty in open court.

Second, Silva's contention that counsel tricked him into admitting these facts and pleading guilty, doc. 1 at 4, is directly rebutted by the plea agreement and the plea colloquy. *United States v. Jerchower*, 486 F. App'x. 68, 71 (11th Cir. 2012). The plea agreement, which Silva stated he read before the plea hearing, *see* CR doc. 90 at 19, stated that "[n]o other promises or representations ha[d] been made to [Silva] by the prosecutor, or by <u>anyone else</u> . . . ." CR doc. 37 at 18 (emphasis added). And, the agreement made explicitly clear "that the court can use these facts [including the guns and Silva's role] in calculating [Silva's] sentence." Doc. 37 at 8. The court also

informed Silva that his sentence will be "subject to the requirements of the United States Sentencing Guidelines . . ." and asked him if he understood that the court "will not be able to determine [his] sentence under the guidelines until . . . after [the court] ha[s] had some additional information . . . ." CR doc. 90 at 15. Further, in direct opposition to his contention now that he relied on his lawyer's assurances about his sentence, the court made clear that counsel's representations regarding the sentence Silva may receive were not controlling.[5] Finally, the court asked Silva if anyone made "any promises or any assurances to [him] at all to get [him] to plead guilty" or "threatened [him] or coerced him in any way to get [him] to plead guilty . . ," and he answered "no" to both questions. *Id.* at 22. Put simply, the plea agreement and colloquy rebut any contentions that counsel's alleged misrepresentations tricked Silva into pleading guilty.

Third, "[t]here is a strong presumption that the statements made during the [plea] colloquy are true." *Jerchower*, 486 F. App'x. at 71; *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988). This presumption is bolstered where, as here, the court asked Silva about the facts making the basis of his plea agreement and gave him a chance to tell the court which facts, if any, he disagreed with before accepting his plea. CR doc. 90 at 19. Silva never raised any concerns about the factual basis or

---

[5] More specifically, the court asked: "[y]ou understand that what I ultimately give you may be different from any estimate that your lawyer may have given you?" CR doc. 90 at 15-16. Silva responded, "yes, sir." CR doc. 90 at 16.

11

reported any purported coercive conduct by his counsel. Instead, Silva represented his plea was free and voluntary and that he was, in fact, guilty. *Id.* at 19, 22. Based on these facts, Silva has not overcome the presumption that his prior statements were true.

Ultimately, to succeed, Silva must "show that [his] counsel's representation fell below an objective standard of reasonableness[,]" and "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty . . ." *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985) (internal quotations omitted); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989). Silva does not really contest his guilt to the drug trafficking crimes charged. CR doc. 1. His contentions related to the firearms and his elevated role are unrelated to his guilty plea to the actual drug charges. And, while he contends now that he pleaded guilty based on his lawyer's assurances that the guns or his role in the drug crimes would not factor in his sentencing, the court made clear, and Silva acknowledged, that his sentence was subject to the sentencing guidelines, and that the court could not determine his sentence under the guidelines until <u>after</u> it received a presentence report and other information. CR doc. 90 at 15. Critically, the court informed Silva that the sentence it ultimately gave him may be different than any estimate he may have received from counsel. *Id.* at 16. And, despite the court's statements to Silva, Silva stated that he wanted to go forward with his plea. *Id.* Even then, to make sure Silva was in fact

12

pleading voluntarily and freely, the court asked him "do you understand that you are not required to plead guilty?" and "do you understand that you are free at this time to take back your plea?" and Silva answered "yes" to both questions. *Id.* Finally, Silva answered, "no" when the court explicitly asked him, "have you heard anything here today that makes you want to rethink your decision about pleading guilty?" *Id.* Put simply, the record belies Silva's contentions, and his plea agreement and change of plea hearing show he was not prejudiced by any alleged ineffective assistance by counsel at the plea-bargaining stage.

**2.**

Silva claims also that counsel's failure to ascertain who owned the firearm found in the Lynwood residence resulted in an improper two-level increase to his offense level. Doc. 1 at 9. At issue here is § 2d1.1(b)(1) of the Sentencing Guidelines which calls for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed . . . ." U.S. Sent'g Guidelines Manual § 2D1.1(b)(1). "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* at cmt. n. 11.A.

Silva's focus on ownership is misplaced. For the enhancement to apply, the Government needed to show only that a co-conspirator possessed the firearm in

furtherance of the conspiracy.[6] Based on the factual basis of the plea, law enforcement found a gun both in the Lynwood residence from which Silva retrieved and sold drugs to a Government source and also in J.G.'s car when Silva traveled with cocaine on a second occasion. Doc. 37 at 3-5. Both incidents support a finding that the possession of these firearms was in furtherance of the conspiracy.

"[N]umerous cases have recognized that guns are a tool of the drug trade." *Pham*, 463 F.3d at 1246 (internal quotations omitted). Indeed, "[t]here is a frequent and overpowering connection between the use of firearms and narcotics traffic. . . ." *Id.* As such, it was reasonably foreseeable to Silva that a co-conspirator would possess a firearm in furtherance of the conspiracy. *Id.* In that respect, even if Silva is not the owner of the firearm found at the Lynwood residence, the presence of the firearm at a residence where Silva admitted he stored controlled substances and from which he retrieved and sold drugs to a Government source support a finding that it was probable that the conspirators used the firearm in connection with the drug offense.

---

[6] For a firearms enhancement based on a co-conspirator's possession to apply, "the government must prove by a preponderance of the evidence: (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Gallo*, 195 F.3d 1278, 1284 (11th Cir. 1999). Here, J.G. was a conspirator as he drove behind Silva to the site of the drug deal at a time when Silva was clearly involved in the conspiracy. Doc. 37 at 3-5; *United States v. Saftchick*, 335 F. App'x 870, 875 (11th Cir. 2009). As for the Lynwood Road residence, a gun is "possessed in furtherance of a conspiracy . . . when found at the location from which the" drugs were sold. *Saftchick*, 335 F. App'x at 875-76 (citing *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005)); *Fields*, 408 F.3d at 1359; *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006).

CR doc. 37 at 3-5.[7] And because the guns found in the house or on J.G. support the offense level increase regardless of which conspirator actually owned the firearms, Silva was not prejudiced by counsel's alleged failure to conduct an investigation to ascertain the firearm's owner.

**3.**

Silva challenges also counsel's decision to withdraw the objections to the enhancements in the PSR for possession of a firearm and acting as a supervisor or manager of the conspiracy. Doc. 1 at 5. Counsel withdrew the objections after the Government agreed to move for a departure based on substantial assistance.[8] To the extent that counsel determined that Silva stood a better chance at receiving a reduced sentence from the Government's motion than through the objections to the PSR, tactical decisions are not for courts to second guess. *See Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009); *Chandler v. United States*, 218 F.3d 1305, 1214 (11th Cir. 2000). Moreover, the facts that Silva admitted to in his plea agreement supported

---

[7] For this reason, even if counsel had not withdrawn the objections, the court would have overruled them. Moreover, even if the alleged failure to investigate who owned the gun was ineffective, Silva was not prejudiced as the gun found in J.G.'s car also supports the application of the sentence enhancement. *Strickland*, 466 U.S. at 686.

[8] Counsel explained, "These [objections] were filed before a 5K1 motion was filed by the Government. And in discussing it with Mr. Silva, it is the position of the defendant to withdraw the objections at this time." CR doc. 81 at 2-3.

the contested increase to the offense level under the sentencing guidelines, doc. 37,[9] and it was reasonable for counsel to forgo making a meritless argument. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002). Furthermore, although counsel withdrew the objections, he still argued for a sentence below the guideline range—noting that "the minimum sentence in this case is the statutory minimum of 10 years, and that the guideline sentencing range is just that, a guideline, non-binding on the Court." CR doc 81 at 8. In doing so, counsel pointed out Silva's history and characteristics, including Silva's age, the then recent death of Silva's parents, Silva's desire to be there for his younger siblings and his own child, and other factors that counsel believed warranted a non-guideline sentence. *Id.* at 6-7. Put simply, even if counsel erred in withdrawing the objections, Silva suffered no prejudice from that decision.

The court notes also that Silva's objections are based in part on his assertion that the PSR falsely stated the conspiracy began in 2014 instead of in 2015 as he maintains. Doc. 1 at 11, 14. As a result, Silva contends the guns and facts concerning

---

[9] As outlined above, the facts Silva admitted to in the plea agreement support the application of the firearm enhancement. *See supra* § B.2. The factual basis also supports the § 3.B.1.1(b) enhancement of three levels for Silva being "a manager or supervisor (but not an organizer or leader) and the criminal activity involv[ing] five or more participants or [being] otherwise extensive[.]" U.S. Sent'g Guidelines Manual § 3.B.1.1(b); CR doc. 37 at 3-8. Silva admitted to his texts records and witness testimony that shows he was in a managerial or supervisory role, and that the conspiracy involved five or more participants as he conceded the involvement of himself, J.G., Romero, Aguilar, and Romero's driver. *Id.* "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. Sent'g Guidelines Manual § 3.B.1.1(b), cmt. n. 1.

J.G. should not have been included in the PSR as those events occurred in 2014. *Id.* at 12-13, 15. But, Silva pleaded guilty to a charge of conspiracy existing from September 2014 to January 2016, *see* CR docs. 1 at 1 and 37 at 1, and admitted to facts that began in 2014. CR doc. 37 at 3-9. Specifically, Silva admitted in his plea agreement that he sold drugs in 2014, that J.G. was present on that occasion, that a gun was found in the house where he sold the drugs, and that J.G. had a gun in his vehicle. CR doc. 37 at 3-5. These facts belie Silva's contention that assessing him offense level increases based on 2014 conduct was in error.

To close, because Silva admitted to the facts that undermine the objections he filed, no credible grounds existed for counsel to pursue the objections. *See Strickland*, 466 U.S. at 687. In light of the factual bases of the plea agreement, the court would have overruled the objections if counsel had not withdrawn them. In any event, although counsel withdrew the objections, he still argued for a sentence that was consistent with the objections he raised. As such, counsel provided objectively reasonable representation, and it is plainly apparent Silva is not entitled to relief on this claim.

## C.

Finally, Silva raises alleged due process rights violations. Doc. 1 at 10.[10] In particular, Silva claims the court sentenced him based on inaccurate information regarding the presence of firearms and his role in the conspiracy. Doc. 1 at 10-16. As stated previously, the firearm enhancement applies both for the firearm found at the residence where Silva stored the drugs he sold to the source and for the firearm in the car J.G. drove behind Silva while Silva was transporting a large quantity of drugs. *See supra* at § II.B.2. And Silva admitted to the accuracy of these facts in the plea agreement and during his plea colloquy. CR docs. 37 at 8; 90 at 18-19. Similarly, Silva admitted to the accuracy of the facts that relate to his elevated role. CR doc. 37 at 3-8. Therefore, Silva has failed to establish any of the facts considered by the court were false, and it is plainly apparent he is not entitled to relief on this claim.

## III.

For all these reasons, Silva's motion, doc. 1, is due to be denied.

**DONE** the 29th day of June, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[10] When a defendant has been denied effective assistance of counsel and the court considered false information as a result, his right to due process may also have been violated. *Townsend v. Burke*, 334 U.S. 736, 739 (1948).